**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 26, 2020**

# In the Court of Appeals of Georgia

A20A0998. IN RE ESTATE OF JEWEL H. PENLAND.

GOBEIL, Judge.

James S. Ray, Sr., beneficiary and co-executor of the estate of his mother, Jewel H. Penland, appeals the probate court's order disinheriting Ray and his sister, Eloise R. Hadaway (also a beneficiary and co-executor of Penland's estate).[1] In relevant part, the probate court concluded that Ray violated the in terrorem clause in Penland's will by failing to make certain distributions as required under the will.[2] On appeal, Ray argues that the probate court erred by ruling that he violated the in

---

[1] Hadaway died on October 12, 2019. The probate court entered an order substituting the executor of her estate as the appellee in this matter. For purposes of this appeal, we will refer to Hadaway's estate as "Hadaway".

[2] In Case No. A20A0999, Hadaway cross-appealed the probate court's order disinheriting her. On January 10, 2020, this Court granted Hadaway's motion to withdraw the cross-appeal.

terrorem clause because his objections to the specific bequests were made when he was acting in his capacity as fiduciary, rather than as beneficiary. Ray also contends that his actions did not violate the in terrorem clause because those actions did not amount to a contest of the probate of the will or an effort to break it. For the reasons explained more fully below, we reverse.

The record shows that Penland executed a will in 2005 and a codicil thereto in 2006. Penland named her three surviving children, Ray, Hadaway, and Dorothy Evans, as co-executors of her estate. Penland's fourth child, Clarence D. Ray ("Clarence"), predeceased her. Clarence was survived by his three children. Penland's will included several specific pecuniary bequests: $10,000 to Hadaway (Item III); $20,000 to Samuel Evans ("Samuel"), Evans's son (Item IV); and $20,000 to each of Clarence's children (Item V). The residue of the estate was to be divided between Hadaway, Ray, and Evans.[3]

Item XI of the will contained the following in terrorem clause:

Should any beneficiary contest or initiate proceedings to contest the validity of this Will or any provision herein or to prevent any provision

---

[3] Under Item VI of the will, the residue of the estate was to be divided between Ray, Hadaway, and Samuel. The codicil amended Item VI, substituting Evans for Samuel as a residuary beneficiary.

2

herein from being carried out in accordance with its terms (whether or not in good faith and with probable cause), then all the benefits provided for such contesting beneficiary in this Will are revoked and annulled. Such benefits, if not part of the residue of my estate, shall go over to and become part of the residue of my estate. If such contesting beneficiary is a beneficiary under any Item of this Will which disposes of the residue of my estate, such contesting beneficiary shall cease to be a member of the class of beneficiaries to whom distributions are required or permitted to be made under such Item. Upon the final division and distribution of the property passing under such Item, the share to which such contesting beneficiary would otherwise have been entitled shall be held and distributed as if such contesting beneficiary had died immediately prior to such division without exercising any power of appointment which he or she might otherwise have had hereunder. Any generation-skipping transfer tax which might arise pursuant to this Item shall be paid from such share.

Item VI (d) of the will contained an equalization provision, which provided that, in dividing the residue, the co-executors

shall compute the value of the assets passing outside of this will to each of my children, including U. S. Savings Bonds and Certificates of Deposit[4] that are jointly titled in my name and one of my children's or

---

[4] The savings bonds and assets passing outside the will were the subject of an action that Ray filed in the Superior Court of Bibb County in 2009. These bonds and assets passing outside the estate were the subject of our opinion in *Ray v. Hadaway*, 344 Ga. App. 642 (811 SE2d 80) (2018). In that case, Ray petitioned the Superior

grandchildren's names, and shall distribute from the assets passing under this will an amount to each child or grandchild sufficient to equalize the entitlement between each of my three surviving children or their descendants.

Following Penland's death in 2007, Hadaway admitted the 2005 will for probate, but did not admit the 2006 codicil. The probate court entered letters testamentary qualifying Hadaway, Ray, and Evans as executors of the estate. Ray and Evans filed a caveat to the will on the ground that Hadaway did not admit the codicil for probate. Hadaway and Samuel filed a caveat to the caveat, objecting to the admission of the codicil. And the will, without the codicil, was admitted to probate in common form. Ultimately, the codicil was admitted to probate in 2017.

In November 2007, Ray petitioned to remove Hadaway as co-executor. In the motion, which Ray filed in his capacity as beneficiary under the will, Ray asserted inter alia that Hadaway had "distributed personal assets from the [e]state without the knowledge or consent of the heirs and contrary to the intent of [Penland] as set forth

---

Court of Bibb County for a constructive trust to be imposed on the proceeds from savings bonds that Ray alleged rightfully belonged to Penland's estate. Id. at 642. The superior court granted summary judgment to Hadaway and Samuel, and we reversed, holding, in relevant part, that genuine issues of material fact remained with regard to whether Samuel breached a fiduciary duty to Penland. Id. at 645-647 (2).

4

in her Will" and would not allow the other co-executors to hire an attorney to "investigate and seek recovery if warranted of approximately $600,000.00 of U. S. Government Bonds that [Penland] desired to be included as a part of her probate estate but were retained by Hadaway and Hadaway's nephew, [Samuel]." Hadaway responded, and filed a counter petition for the removal of Ray and Evans as co-executors.

The parties were unable to agree to the payment of the bequests to Clarence's children. On April 22, 2008, Hadaway, in her capacity as co-executor, sought an order from the probate court to compel payment of the specific pecuniary bequests set forth in Items III, IV, and V of the will. According to Hadaway, Ray, as co-executor, refused to permit the bequests to be paid. In her motion, Hadaway acknowledged the pending caveat pertaining to the codicil, but she maintained that the codicil would not change any of the specific bequests. She further argued that the equalization provision is inapplicable to the bequests. In support of the motion, Hadaway maintained that "all debts of the estate have been paid and there are more than adequate funds remaining to the estate to pay any additional, future debts or administrative expenses" and "there is no good reason why these specific pecuniary bequests cannot be paid at this time." Ray responded to the motion as "one of the named and qualified Co-

5

Executors," and essentially sought to delay payment of the bequests until such time as "all of the Executors consider the complete financial condition of the Estate." Ray also sought an accounting of Penland's estate.

The probate court granted Hadaway's motion in part, and ordered the estate to pay the bequests to Clarence's children. In its order, the probate court reasoned that because Clarence predeceased Penland, the equalization provision did not apply to the gifts to his children, but to the distribution of the residue of the estate. The court also found a lack of evidence that there were insufficient funds to pay the bequests.

Several years of litigation over the estate ensued. In September 2016, Ray and Hadaway agreed to voluntarily resign as executors of Penland's estate. Thereafter in October 2016, Ray filed a petition to recover the expenses he incurred in his capacity as co-executor.[5]

In 2018, Ray filed a motion to disinherit Hadaway and Samuel, arguing that they triggered the in terrorem clause by objecting to the admission of the codicil to probate. Hadaway filed a cross-motion to disinherit Ray, claiming that his objection to the payment of the bequests to Clarence's children also triggered the in terrorem

---

[5] See OCGA § 53-5-26 (providing for recovery of expenses, including reasonable attorney fees, incurred by a named executor in connection with admitting a will for probate).

clause. Following a hearing, the probate court entered an order on Ray's petition to recover expenses and granted both motions to disinherit. Specifically, the court found that Hadaway's failure to offer the codicil in connection with her petition to probate the will, coupled with Hadaway's and Samuel's motion to dismiss Ray's caveat that offered the codicil, triggered the in terrorem clause. As to Ray, the court found that his failure to pay the specific bequests to Clarence's three children, such failure necessitating a court order directing him to pay those bequests, triggered the in terrorem clause because it prevented a term of the will from being carried out. The instant appeal followed.

1. Ray first argues that the probate court erred by disinheriting him because his challenge to the distribution of the bequests to Clarence's children was in his capacity as a fiduciary, rather than a beneficiary. According to Ray, because the in terrorem clause only applies to actions by beneficiaries, and he simply delayed the distributions *in his capacity as co-executor*, the clause is inapplicable to him. We agree.

"Because in terrorem clauses result in forfeitures, they must be strictly construed." *Sinclair v. Sinclair*, 284 Ga. 500, 501-502 (2) (670 SE2d 59) (2008) (citation and punctuation omitted).

7

The in terrorem clause at issue in this appeal provided that:

Should any beneficiary contest or initiate proceedings to contest the validity of the Will or any provision herein or to prevent any provision herein from being carried out in accordance with its terms (whether or not in good faith and with probable cause), then all the benefits provided for such contesting beneficiary in this Will are revoked and annulled.

In *Preuss v. Stokes-Preuss*, 275 Ga. 437 (569 SE2d 857) (2002), the Georgia Supreme Court construed a similar in terrorem clause, which provided that if a "beneficiary of the will" contested

the validity of the will or any provision thereof, or institute[d] any proceeding to contest the validity of this will or any provision hereof or to prevent any provision hereof from being carried out in accordance with its terms (whether or not in good faith and whether or not with probable cause), . . . then all the benefits provided for such beneficiary in this will are revoked and annulled.

Id. at 437-438. The probate court in that case ruled that an action by one of the co-executors, both in her capacity as an individual beneficiary and as co-executor, for removal of the other co-executor, would not trigger the in terrorem clause. Id. at 438. In affirming the probate court, the Supreme Court reasoned that "[t]he in terrorem clause in question provides that only a *beneficiary* forfeits his or her interest in the

8

estate if he or she brings an action that falls within the scope of the clause, and it does not prohibit or address actions by co-executors." Id. (emphasis in original). Thus, the Court held that, under a strict construction, the in terrorem clause had no application "to an action by one co-executor to remove another co-executor." Id.

In the case sub judice, in her motion to compel payment of the bequests, Hadaway argued that Ray, *as co-executor*, refused to permit the bequests to be paid. Ray responded to the motion to compel as "one of the named and qualified Co-Executors" under Penland's will and stated that he did

> not necessarily object to the ultimate distribution of money sought to be distributed by [Hadaway] subject to a decision by all the Executors that this is proper under the terms of the Will and Codicil, but [Ray] respectfully shows that there is no requirement that this [c]ourt act at the request of one of the Co-Executors to distribute these specific pecuniary bequests until all of the Co-Executors can consent to such distribution and be advised as to the status of the assets and liabilities of the Estate.

Further, in its order granting Hadaway's motion to compel, the probate court directed that the estate pay the $20,000 specific bequests, and did not address Ray in his capacity as beneficiary. In light of the foregoing, it is clear that Ray was acting in his

9

capacity as co-executor when he challenged the distribution of the specific bequests to Clarence's children in the manner that he did.[6]

And, the language of the in terrorem clause at issue in this case does not govern actions by executors, at least while acting in their capacities as executors. Accordingly, strictly construing the in terrorem clause, and under the holding in *Preuss*, we conclude that the clause does not apply to those actions undertaken by Ray in his capacity as co-executor. Hence, we reverse the order of the probate court disinheriting Ray.

2. Based on our holding in Division 1, we need not address Ray's contention that his actions were insufficient to trigger the in terrorem clause because those actions would not have had the effect of destroying the will. See *Preuss*, 275 Ga. at 438 (where Court found in terrorem clause inapplicable to action by one co-executor to remove another co-executor, Court declined to address related argument that clause violated public policy).

*Judgment reversed. Barnes, P. J., and Pipkin, J., concur.*

---

[6] Had the record supported a finding that Ray was not acting in his role of executor, the outcome might be different.